Good morning, ladies and, well, I guess we just came down to gentlemen now. We have audience. We have ladies in the audience, and good morning. And Judge Seiler and Judge Forrest and I, we all welcome you to the Ninth Circuit. And Judge Forrest and I thank our colleague, Judge Seiler, for sitting with us on assignment. And thank you to attorneys for advancing this to today to accommodate us. Are you able to see, Judge Forrest, okay? I am, Your Honor. Okay. And I think we'll let you know. We've got a good view as well. So you each have 15 minutes, and if for the, I guess for the appellant, 15 minutes includes any rebuttal time that you want. So if you wish to reserve any time for rebuttal, you have to take responsibility if you're keeping track of your time. But if you tell me what you'd like to reserve, I'll try to, I'm looking at a clock, so I'll try to remind you. The clock counts down, then it goes up. You're in overtime when it goes up. It's not because I gave you more time. But if any of the judges are asking you questions, please, you don't have to ask permission. You can just answer any of the questions, even if it does go into overtime as far as that goes. So if counsel would state his name and his appearance. Thank you. We're ready. Good morning, Your Honor. Steve Brunel of Greenspoon Martyr on behalf of the appellants, the smart capital entities. Okay. Go ahead. May it please the Court. This appeal arises from a commercial lease dispute in the bankruptcy court. The appellants, smart capital, were the landlords under the lease, and the appellees, the debtors, they were the tenants under the lease. The bankruptcy court granted a lease assumption motion under Section 365A of the Bankruptcy Code. That order was affirmed at the district court level, and appellants now seek review of the legal error committed by the lower courts as to their interpretation of Section 365B of the Bankruptcy Code. Now, I'd like to begin by providing some statutory context, which I think will really nicely organize the arguments. Can I ask you a factual question first? Do you agree that any alleged default was cured as of the date of the assumption? No, Your Honor. As of the date of the assumption, it's a unique situation. The motion to assume the lease was filed in October of 2019. There was one default that we've pointed to, which is the nonpayment of the April 2020 rent. That occurred after the lease assumption motion had been filed. In addition, if there was any cure, any cure didn't occur until about a week prior to the evidentiary hearing, which is October 2020. Well, let's assume if it was cured. If it was cured, is 365B1 triggered? Yes, it is, Your Honor, because what is needed is to trigger 365B, subprongs B1 and A, 2 and 3, is only a finding that a default has occurred under the subject lease, any default under the subject lease. Once that's been triggered, the question of curing comes in within the discussion of context of what I call adequate assurance analysis under those subprongs of 365B. So in this case, the bankruptcy court committed a legal error by interpreting the default to mean a material default under state law. And going back to trying to put these arguments into context, under 365A, a debtor in Chapter 11 is allowed to assume a lease under the business judgment rule, which is a relatively low standard. As part of that analysis— Excuse me, we're getting a little feedback here. We're stopping it for just a sec here. We had great this morning, but this is a little— Is Judge Morris muted? I'm not muted. Do you need me to mute? Yes. Yes, please tell her to mute. Okay, if you mute. And I'll make sure—raise your hand if you want to ask something. If you can't unmute fast enough, I'll make sure you get your questions. Okay, we're going to try again. Go ahead. So returning to the statutory context, under 365A, a debtor can assume a lease if there is an actual commercial lease that can be assumed. To determine whether that lease can be assumed, the court must determine whether that commercial lease expired pre-petition. To do that analysis, the bankruptcy courts must turn to state law. That's the rule that's established under Windmill Farms. Now, Windmill Farms extrapolated that rule from— Doesn't the reasoning in Windmill Farms suggest the default needs to be of sufficient substance? Maybe a.k.a. material under Section 365b.1. How is that case distinguishable? I'm sorry, Your Honor. Can you repeat that question? Doesn't Windmill Farms suggest that the default needs to be, quote, of sufficient substance, unquote? Yes, Your Honor. So I am aware of that passage. My interpretation of that passage is that the court found in that case that the default wasn't incurable, that there was still an ability for the debtor to cure that default within the context of subsection 365b. Now, we have no issue with Windmill Farms because the holding of Windmill Farms is that the court must look to state law under 365c.3 to determine whether the lease has been terminated pre-petition. Again, that's analysis that's conducted under 365a. Our appeal arises from 365b. However, to the extent that the court, Windmill Farms, did make that finding, appellants would ask the court to clarify or at least reverse that passage, which arguably is dicta in Windmill Farms. Well, let's say we agree with you that it doesn't have to presently be in default, okay, that if there was a default at any time, if that's what the language says. I'm just saying hypothetically. Let's say we agree with you, and let's say that the district court's injecting material is wrong. What adequate assurances are you seeking, and why isn't any error harmless here? Because I read where the district court talked about that smart capital was just like trying to say you breathe too loud, and that's a default. You know, the district court did not – well, the court didn't seem to be impressed with the things. They seemed to think that you were just manufacturing breaches or defaults. Of course. There's three reasons. First, under 365b.2, the bankruptcy court, in order to grant the assumption of order, the debtor must compensate the landlord for any pecuniary losses. In this case, we were not given the ability to show the pecuniary losses, namely attorney's fees, that were suffered by my client. There was an indemnity provision that required the debtor to indemnify us for any attorney's fees that may arise from a breach of the contract. Now, we were not given the opportunity to present that evidence under the adequate assurance analysis that the bankruptcy court did not go into at that level. Now, there's also a prejudice to my opponent's legal rights in subsequent proceedings. Counsel? Counsel? Yes, Your Honor. I want to go back to the point that you just made to make sure I understand what you're saying. Are you saying that you think that there were attorney fees or some sort of an indemnity award that you could assert based on that late payment? It is not based on the late payment itself. It's based on the provision of the contract that provides that the debtor must indemnify my client. And Section 365b.2, which provides that any such contract provision is given effect as part of assuming the lease. That's fine, except indemnify what? The only thing I'm aware of is the late payment, and I'm not sure I understand what monetary harm would be flowing from that. And based on the nature of the other issues, it's not clear to me what other monetary harm you think you need to indemnify from. Under 365b.2, the pecuniary loss is not limited just to the late payment. It also includes any attorney's fees that were incurred or any other costs that were incurred by my client protecting its rights in the bankruptcy proceeding. So the late payment itself was enough to trigger that further analysis, and once we get to that legal analysis, yes, those attorney's fees could be part of the amounts that needed to be compensated for. Now, under 365b.2, there's three levels of analysis, but the first one is curing. So as to your honest question of whether that would need to be addressed during the adequate assuring analysis, yes, that would be addressed under the curing prong. But the next prong under that is the compensation for pecuniary losses. And again, that includes other costs and attorney's fees. Now, the prejudice also continued to my client in subsequent proceedings. We recently filed a motion for request for judicial notice. The purpose of filing that was to show that attorney's fees prevent orders that have been entered in the bankruptcy court subsequent to this proceeding. In that analysis or in those proceedings, the bankruptcy court has awarded $600,000 against my client. Now, the legal prejudice is not the unfavorable award of attorney's fees. The legal prejudice arises from the bankruptcy court's analysis of awarding the attorney's fees. It specifically said within the context of deciding whether a fee should be awarded on a contract in its memorandum of request for judicial notice one, it said, had I actually conducted an adequate assuring analysis under the subprongs of subsection 365B, I may have come out with a different result. Now, returning to Judge Forrest, your question regarding the additional losses, the pecuniary losses, my client suffered legal prejudice as well because any award or any additional amounts that the debtor may have been required to compensate my client as part of the lease assumption process would have been used to offset any unfavorable attorney's fee award. And so that's also the legal prejudice or prejudice that my client has suffered due to the bankruptcy court's error in interpreting subsection 365B. What's the status of this property now? Is it just sitting empty or is it being used? So that leads me to the third legal prejudice that my client has suffered. The tenants are continuing in possession of the property so the parties are moving forward under the lease. However, as part of that attorney fee award, the court required that all rents to be paid were put into a rent trust account. So my client, since the entry of the fee awards, hasn't received any rent. They don't have anything coming out of it. Correct. And so that's an additional prejudice that my client has suffered from this erroneous application of section 365B. I want to ask a question about that because, again, assuming we agree with you that the bankruptcy court misconstrued the bankruptcy statute, she was still going to have to go through an analysis of whether a breach occurred or not, which, I mean, the attorney fee question really isn't before us, but arguably that is a contract question. Even if she had then also done the adequate assurances analysis, which did not happen here. So because that question of default, which is a contract matter, would have had to happen regardless, I don't understand what your prejudice argument is with regard to the attorney fees. Once the adequate assurance analysis was triggered, the prejudice is, again, that the court didn't conduct that analysis where we would have been provided an opportunity to present our evidence of pecuniary losses that the debtor would have had to have compensated as part of the assumption process. Now, our position is the court can actually make the finding that the default occurred based on the record. Now, the bankruptcy court looked at the facts of this case through the wrong lens, applying the wrong law. But even doing so, it's our position that based on the nonpayment of that April 2020 rent, the court can make the finding that the default did occur. There is also another default that I think this court could make the finding of based on the graffiti that's on the wall. Now, that's my support for that would be found at excerpts of record 115, 47, 48, and supplemental excerpts of record 46. And based on those two defaults that I think this court can, reviewing this matter on a de novo standard, can make that finding and find that that actual default has occurred. Now, granted, if the court would like to make a more limited finding, the court can find that the bankruptcy court applied the wrong lens and the wrong law to this case and remand the entire proceeding back to the bankruptcy court and allow the bankruptcy court to apply the correct law as to whether there's a default. And we would welcome that opportunity because, again, then we would have given the opportunity to present that further evidence of pecuniary losses that my client suffered. Now, I... Maybe we're beating a dead horse and I'm asking the same question again, but the thing that is not coming together for me in this case is I think that you're right, that if materiality isn't part of this statutory requirement, that there is a default and that would have triggered the analysis and it should have been done. But I'm left with the question of so what? What would you get if that analysis had been done based on the nature of the defaults that are being presented here? It's one mispayment that has subsequently been made and the late fee has been paid. And these other non-monetary issues, I don't understand what adequate assurances your client needs with regard to those issues, nor do I understand what pecuniary loss your client has suffered as a result of the graffiti, for example, which is the example you just gave. So help me with if we agree with you that the district court misconstrued this statute and should have done this other analysis, what difference does it make? That's the harmless error question that Judge Callahan raised. The pecuniary losses part that I'm focusing on, Your Honor, is not limited to just the April 2020 rent. That falls in within the subprong of curing the default. The next subprong is that compensation for pecuniary losses, which, again, arises from the indemnity provision in the lease agreement. So, in other words, the amount that the debtor is required to provide to the landlord as part of assuming the lease should have been greater than just the April 2020 rent. It should have also included all the attorney's fees that were incurred by my client in protecting its legal rights during the bankruptcy process. As legal support for that, we make the arguments and we cite cases. I will reserve the balance of my time for rebuttal. All right. Do either of my colleagues want to ask additional questions? All right. You only have 14 seconds left, but I'll give you a minute. Thank you, Your Honor. I appreciate it. All right. We'll hear from Hawkeye. Good morning, ma'am. Please, the Court. It's a very big honor to be here. I think in order to get to the issue that the appellant wants to discuss as to whether or not materiality is implicit in 365, you have to first find that the bankruptcy court was clearly erroneous in determining that there was no default. And I think there's ample evidence in the record to support the bankruptcy judge's findings. Well, it looks like if you look at the language, if there has been a default, it doesn't mean if you're in default at that moment. So if you're a plain language kind of person, I think that cuts against you that there was a default, albeit cured. But then, and I think that there seems to be some substance to the fact that the court got it wrong on the material default, but then what difference does it make? Yeah, I think so. I'm following your logic and it makes sense, but from my perspective, if you focus on 16.1 of the lease, an event of default is defined within the lease itself. And the court takes that provision. Since the bankruptcy court does not define, or the bankruptcy code does not define default, it's defined by application to the lease and by application of state law. I think that that's pretty clear. Well, but it seems like your client was trying to get COVID relief and then it was determined that they didn't want to pay the rent because hoping that they could get COVID relief on that. And then that turned out not to be the case and so then they paid it. I think from just a common sense practical point of view, that's precisely correct. But if you look at the language of 16.1, there's two things that are required. First of all, 16.1 is in the disjunctive. So if we look at the monetary parts, what 16.1 of the lease requires is that first there be an event and second, that that event continue for some period of time after the landlord gives notice.  That is what is defined under the lease as an event of default. And in this case, there is absolutely nothing in the record since we seem to be hung up on the rent payment issue here. There's nothing in the record to show that the landlord ever gave that notice. In fact, if you look at that late payment issue and to address something that Judge Forrest brought up just a moment ago, if you look at the late payment, that was a contractually negotiated term that gave the landlord the benefit of the bargain. But under 6.6 of the lease, which is the late payment, that also requires the notice of landlord. Here in this case, when we were at the hearing, a four-day hearing, there was never presented into evidence any notice given by the landlord as to this rent issue. Never was. So in order for there to be an event of default as defined by the lease, it needs to have both of those component parts. So irrespective of the fact that the notice wasn't given, the tenant in this case went ahead and paid the rent and went ahead and also paid the late penalty, the 4% late penalty, which is in the lease, even though a notice of default wasn't given. And what's important also here is the landlord accepted both of those payments without entering any reservation or objection. In other words, it didn't take the payment and say, we're reserving all rights. It didn't take the payment saying, we're still objecting to what happened. We're going to pursue all rights. Where's all these rents going? Are they going into the bankruptcy court for distribution later, or where is it? I think that's an interesting point. My understanding of that is very simple. The bankruptcy court entered its order. The bankruptcy court then had a motion for attorneys' fees. In lieu of the landlord posting a bond for those attorneys' fees, an agreement was reached where those fees would be paid into an escrowed account and just be held in the escrow account pending the outcome of the case. So that's where those rent payments are at. They're not in... What's the landlord getting right now? Nothing? We're at the end of that period of time. My understanding is that we're at the end of that period of time. So whatever payments now come due under the lease, those payments are going to the landlord. So I think that that's my approach to this issue of what the bankruptcy court did in terms of the rent issue. I think it's very important to look at the lease to determine whether the lease is an event of default. I respectfully take a... So you're trying to say that the lease trumps the statute, and that doesn't sound right to me. I'm trying to say that the statute uses the word default. It doesn't define what that word is. And in order for that word to have meaning, you have to look at what is an event of default as defined by the negotiated agreement between the parties. So it's always going to be different. I think that if I had... That there's not going to be a meaning of default. It's always going to be different because parties are always going to have different contracts. I think that under 365, the parties are entitled to the benefit of their bargain. If I negotiated, at least hypothetically, if I negotiated a lease that said that if I didn't make a rent payment on a particular date, that I had six months to make that rent payment with no penalty, that would not be a default because under the negotiated terms, the benefit of the bargain, both for the landlord and for the debtor in possession, I'm entitled to the bargain that I struck, and that's what the lease was. Council, can I jump in on that? Because I pulled up the lease and I'm looking at it and I'm not sure it reads the way you're asking us to read it. It says 16.1 says, should tenant at any time be in default? And then it goes on to describe the process that you're saying about the notice and then sort of the procedure triggering remedies for the landlord. But it starts off as, should tenant at any time be in default? So that to me says that you've got to have a default to trigger this procedure that's in 16.1 with the notice, et cetera. You still have a default which is commonly defined as just failure to comply with the terms of the agreement. And I'm not quite sure how you're redefining default even under this term. Well, respectfully, I think that the term default is defined under another section of the lease and it says a default is a default under any term of this provision. The lease calls for a rent payment to be made, a minimum rent payment to be made. I think that default is used perhaps in the vernacular in that sense saying that when a rent payment isn't made on the first day of the month, then that is an event. However, in order for it to be an event of default as defined in the lease, I do believe that 16.1 as read says that the landlord must give notice and that event must continue for five days. Otherwise, what you would be doing is you would be removing from the debtor in possession the right to make that payment within that five-day period and that's something that was negotiated. So then I don't know where we wanted to take the argument after that. Well, let me ask you this. Okay, let's just say we interpret the language of 365 to say that there was a default even though it was cured. And then hypothetically that we say that the court erred when it said it has to be material. So if the court erred on that, then that would trigger assurances under 365b1. So can you explain how the denial of SMART's right to adequate assurances of future performance does not affect its substantial rights? That goes to the harmless error analysis. I mean, let's say we rule against you on statutory language, but so we say that it was triggered. However, then we decide whether it's harmless or not. And your friend on the other side has given us a parade of horribles and how they've been damaged by not being able to go through the assurances analysis, why it could not be considered harmless. Well, I think that you have to look at the entire lease and the entire proceeding in totality. What you have here, and the bankruptcy court does engage in an analysis in the record where she walks through this whole process when she determines that she finds it's not a default. She doesn't find that it's not material. She finds both, but first she says it's not a default. She talks about the fact that it's not just a nonpayment of a rent. We've had a long period of time here with the lease. There's no question that the lease payments have been made throughout the term of the lease. So there's this long period of time. She talks about the fact that it wasn't just a tenant that didn't pay a lease. There was a motion made to the bankruptcy court at a time of a national pandemic where we had very unusual rules, including this rent moratorium rule. The debtor in possession made an application to the bankruptcy court for a determination of this issue. That was actually heard within a very short period of time. The court determined that the force majeure clause in the lease overcame the rent moratorium from the city of Los Angeles and then entered an order that the rent had to be paid, and the rent was immediately paid. So the adequate assurance issue, I think, is just belayed by the facts of the case. I would assume that if there was anything beyond that that caused the landlord to have some kind of fear that they were not going to receive future rent payments or not receive future performance, that some kind of factual showing would be made somewhere along the line, and the record's just devoid of that. I just think the other thing that I would like to bring to the court's attention is focusing back once more on the issue of the breaches. We just had some mention in oral argument about graffiti. There were a number of things thrown out in this hearing, and I think at some point in time, when we talk about the materiality issue, I think what the court is really trying to say is there has to be some substantive weight to what you have. There was an allegation that was thrown out in the bankruptcy trial, I'm sorry, in the 365 trial, about drug usage, and the bankruptcy court's finding on that was it came out of absolutely nowhere. The bankruptcy court obviously wasn't impressed with the things that Smart Capital was coming up with. It basically just said, hey, you're just being picky, and you have no credibility with me on that. I agree. In fact, I think she took it a step further. She used words like manufactured, made up, and made up sometimes. That's in the record at page 52. She talked about the default claims just being kind of a moving target. They keep getting piled on. That's in the record at pages 28 and 29. And there was the whole issue of Mr. Chang himself, who was Smart Capital's main witness, the managing agent, who signed a declaration. I'm sorry, he signed an estoppel certificate on June 6th saying that the lessee had no defaults. And that's at our supplemental record at 36 and 37. He signed saying that there is no default. And then six weeks later, he sends a notice of default intending that there are defaults that predated his own signing of an estoppel certificate that was submitted to a federally insured lending facility to loan money on the property. At the hearing of this matter, she wasn't impressed. There were severe issues regarding the credibility and the reliability of any of this information. And I would like to point out to the court, as I'm sure you're aware, that this hearing took place as a contested matter. It took place after a year of discovery. Thank you. So to have the basic dearth of information relative to the case, necessary to make a relatively easy showing of what these burdens were, they were noticed. Here are the facts. We had the issue with the alcohol on the premises. There was no records brought in by Smart Capital from the Alcohol Beverage Control Board to show that there weren't any permits issues. When does this lease expire? Does it have a termination time? May I ask my colleague? I'm not really quite sure. Okay. Do you know? Okay. I think it's got five more years. I think the other thing that the bankruptcy— I don't usually allow call a friend or 50-50. So usually you're stuck if you come to the podium. So we'll say we don't exactly know. I don't exactly know, and I appreciate the courtesy, and I apologize if I stepped out of bounds. But the bankruptcy court also made a finding in the transcript, and she talked about the fact that when she was evaluating the credibility of Mr. Chang, she talked about the fact that this was an under-market lease. In other words, there was motivation on behalf of Mr. Chang to perhaps shade his testimony. Now, that is words that I'm using. The court didn't use that. But I mean— Okay. So you're getting to the end of your time. So unless my colleagues have questions, I would say you should wrap it up. Did you have a question, Judge Forrest? Go ahead. I want to be clear on your position. Is it your position that the bankruptcy court found no defaults, or is it your position that the bankruptcy court found no material defaults? My position is the bankruptcy court found no defaults. No defaults? No defaults. So what do you do with her statement, excerpt of Record 88 and 89, where she says, I think you're misconstruing my ruling. The defaults that I found occurred—I found were not material. I think that you have to look at—she makes mention of the defaults multiple times. She also says about the rent, since that seems to be the one that we're arguing most about, that there really is no default at this time. So she made that finding. She also said in the record that—if you just give me a quick moment, I know that I'm running out of time. She also said in the record that there was no default, and even if there was a default, it was not a material, and that's in the record as well. And I'm sorry, I can't find the precise quote right now. All right. Well, your time's expired. Did you have any additional questions, Judge Forrest? Judge Seiler? Okay. Thank you for your argument. All right. One minute, rebuttal. Thank you, Your Honors. In response to Judge Forrest's interpretation of the lease provision as to defaults, that is how the appellants read the lease as well. The nonpayment itself, if it's not paid on the first day of the month, that's the default, which then triggers a written notice to provide a cure period and what have you. Now, making sense of the Bankruptcy Court's discussion of materiality, what the Bankruptcy Court essentially did there is it sort of conducted a half-adequate assurance analysis. It found a default, and then it kind of went into subsection B1a as to, well, the debtor somewhat cured the default. So what we're requesting here on remand is to allow the Bankruptcy Court to fully complete that analysis, which again leads me to subsection B1b, which would provide us the opportunity to provide evidence as to pecuniary losses that my client suffered as a result of this bankruptcy proceeding. Counsel, I mean, I guess I'm a little bit surprised by that argument today, because as I read your brief, the argument, the thing you were asking for was adequate assurances, not compensation, and that's a heading in your brief. So I'm surprised by the argument, because I didn't see that in your brief. Well, we do ask for attorney's fees in our briefs, Your Honor, and that's at excerpts of Record 118-120. So it is not a new argument that's being raised. It was raised in the lower courts. Unfortunately, we weren't given that opportunity to present that evidence. All right, your time's expired, both. And thank you both for your argument, and thank you for accommodating the court moving it to today. We appreciate that. All right. Thank you, Your Honor. This matter will stand submitted, and this court is in recess until tomorrow morning at 9 a.m. Thank you, Counsel. Thank you, Your Honor. All rise.
judges: Siler, CALLAHAN, FORREST